# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### CLARKSBURG

WILLIAM COLBERT,

        Plaintiff,

v.                                                    Civil Action No. 1:10-CV-19
                                                      Criminal Action No. 1:06-CR-94-1
                                                      (Judge Keeley)

UNITED STATES OF AMERICA,

        Defendant.

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

On January 5, 2010, William Colbert ("Petitioner"), proceeding *pro se*, wrote a letter to the District Judge, challenging the validity of his conviction and sentence on several grounds. Petitioner's letter was received by the Court on January 21, 2010, and docketed as a letter. (ECF No. 60.) That same day, the Court advised Petitioner, via a Notification to Defendant of Right to Consent to Proceed Under 28 U.S.C. § 2255 or to Proceed as Filed (ECF No. 62), of its intent to characterize his January 5, 2010 letter as a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 unless Petitioner responded to the contrary within twenty-one (21) days. The Court included an election form for Petitioner to fill out and return to facilitate the process and further advised Petitioner of all of his rights under 28 U.S.C. § 2255.

On January 26, 2010, Petitioner signed the election form and returned it to the Court, choosing to have his January 5, 2010 letter converted to a motion filed pursuant to 28 U.S.C. § 2255. (ECF No. 64) The form was received by the Court on February 1, 2010, and docketed the same day.

Accordingly, on February 1, 2010, Petitioner's January 5, 2010 letter to the District Judge was re-docketed as a § 2255 motion. (ECF No. 60.)

Upon a preliminary review of the petition, it appeared that the petition was untimely, having been filed one year, nine months, and twenty-nine days after the one-year statute of limitations had expired. Thus, on February 2, 2010, pursuant to *Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002), the undersigned issued a notice to Petitioner, via certified mail, return receipt requested, advising him that his case would be recommended for dismissal unless he could show that his motion was timely. (ECF No. 67.)

On February 22, 2010, a review of the docket provided no indication that Petitioner had received the February 2, 2010, *Hill v. Braxton* notice.[1] Accordingly, an Order Directing That *Hill v. Braxton* Notice Be Re-Sent Forthwith (ECF No. 76) was entered. A duplicate copy of the original notice was sent, and the Court, believing that Petitioner had not yet received the original warning, advised Petitioner that he had an additional twenty-eight days in which to respond or to sufficiently explain why his case should not be dismissed. Later that same day, Petitioner filed a Motion to Amend Section 2255 Motion, seeking leave to amend in order to more fully set forth his legal claims and to establish his entitlement for equitable tolling. (ECF No. 74) The Petitioner's motion made reference to the original *Hill v. Braxton* Notice that was sent. Petitioner's Motion to Amend was granted by Order entered that same day. (ECF No. 77.)

On March 4, 2010, Petitioner filed his Amended Motion to Vacate Under 28 U.S.C. § 2255. (ECF No. 81.)

---

[1] The "green card" indicating successful receipt of the original *Hill v. Braxton* notice was never returned to the Clerk's office to be electronically filed on the Petitioner's docket.

On April 19, 2010, fifty-six days[2] after the Court's second *Hill v. Braxton* notice afforded him an additional twenty-eight days to respond, Petitioner finally filed his response. (ECF No. 85.)

On May 13, 2010, the Government responded (ECF No. 95) and also filed a Motion for Leave to File Out of Time. (ECF No. 94.) Petitioner replied on May 21, 2010, in the form of an Opposition to Motion to Dismiss (ECF No. 97) and Motion for Appointment of Counsel. (ECF No. 99.)

On June 21, 2011, this Court entered a Report and Recommendation setting an evidentiary hearing solely on the issue of whether Petitioner instructed his counsel to file an appeal. (ECF No. 110.) It was further ordered that B. Craig Manford, Esq., be appointed to represent Petitioner at the hearing.

On August 10, 2011, this Court held an evidentiary hearing pursuant to the previously-entered Report and Recommendation. (ECF No. 122.) Petitioner appeared in person and by counsel, B. Craig Manford, Esq., and the Government appeared by video by counsel Zelda Wesley, Assistant United States Attorney. (ECF No. 121.) Also appearing by video was Brian J. Kornbrath, Federal Public Defender for the Northern District of West Virginia, who appeared as a witness. Testimony and documentary evidence were taken and this Court took the matter under advisement.

After considering the briefs of the parties and the evidence presented at the hearing held on August 10, 2011, this Court now issues its Report and Recommendation to the District Judge, finding that Petitioner has not carried his burden in showing that he unequivocally instructed his attorney to file a Notice of Appeal or that his attorney had a duty to consult under *Roe v. Flores-*

---

[2] Petitioner's response was received seventy-six days after the Court issued its original *Hill v. Braxton* notice. Petitioner acknowledged in his February 22, 2010 motion to amend that he received the original notice in a timely fashion. (ECF No. 74 at 1)

*Ortega*, 528 U.S. 470 (2000). Furthermore, this Court finds that even if Petitioner did instruct his attorney to file a Notice of Appeal, all of Petitioner's claims are untimely and he has not met his burden of demonstrating that equitable tolling should apply to the statute of limitations.

## II. FACTS

*A.    Conviction and Sentence*

On September 13, 2006, the Grand Jury named Petitioner in four counts of a six-count indictment. On November 7, 2006, Petitioner signed a plea agreement (ECF No. 32) in which he agreed to plead guilty to Count Two of the indictment charging him with distriubtion of crack cocaine in violation of Title 21, United States Code, §§ 841(a)(1) and 841(b)(1)(C). Additionally, Petitioner knowingly waived his right to appeal and to collaterally attack his sentence. Petitioner's plea agreement contained the following language regarding waiver:

11.    Mr. Colbert is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, the defendant knowingly waives the right to appeal any sentence with a base offense level of thirty-four (34) or lower under the U.S.S.G. (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742, in exchange for the concessions made by the United States in this plea agreement. The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255. The parties have the right during any appeal to argue in support of the sentence.

(ECF No. 32, ¶ 11 at 3.)

On December 1, 2006, Petitioner entered his plea in open court. (ECF No. 109.) Petitioner was 25 years old and had an eleventh grade education. *Id.* at 13. Petitioner testified that he could

read, write, and understand the English language. *Id.* He denied any physical or mental disability that might affect his ability to fully participate in the proceedings and denied any recent illegal drug or alcohol use. *Id.* at 13-14. Petitioner testified that he understood and agreed with all of the terms and conditions of the plea agreement. *Id.* at 17. The Court specifically asked Petitioner if he understood that, under the terms of the waiver of his appellate and post-conviction relief rights, he only retained those rights if the sentence he ultimately received was based on a base offense level of 35 or higher; Petitioner informed the Court that he did understand the waiver provision. *Id.* at 26-27. The Court then reviewed all of the rights Petitioner was giving up by pleading guilty. *Id.* at 23-29. During the plea hearing, the Government presented the testimony of Jeff Beatty, deputy sheriff with the Monongalia County Sheriff's Department and Mon Valley Drug Task Force, to establish a factual basis for the plea. *Id.* at 32-33. Petitioner did not contest the factual basis of the plea. *Id.* at 33-34.

After the Government presented the factual basis of the plea, Petitioner advised the Court that he was guilty of Count Two of the indictment. *Id.* at 34. Petitioner further stated under oath that no one had attempted to force him to plead guilty and that he was pleading guilty of his own free will. *Id.* at 22, 34-35. In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. *Id.* at 17-18. Petitioner testified that his attorney had adequately represented him and that his attorney had left nothing undone. *Id.* at 15-16, 34. Finally, Petitioner said he was in fact guilty of the crime to which he was pleading guilty. *Id.* at 22, 35.

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily and that Petitioner understood the consequences of pleading guilty. *Id.* at 35. Petitioner did not object to the Court's finding.

On March 12, 2007, Petitioner appeared before the Court for sentencing. After considering several factors, including the circumstances of the crime and the large amount of drugs involved; Petitioner's criminal history, career offender status, and his acceptance of responsibility; the sentencing objectives of punishment; and Petitioner's need for mental and physical health issues as well as long-term drug treatment, the Court sentenced Petitioner to a term of 151 months imprisonment – the lowest end of the guideline range – and three years supervised release. (ECF No. 108 at 15.)

B.    *Appeal*

Petitioner did not pursue a direct appeal.

C.    *Federal Habeas Corpus*

**1.    Petitioner's Contentions (ECF No. 60)**

Petitioner raises two grounds of ineffective assistance of counsel in his petition:

a.    Before he entered his plea, counsel misadvised him regarding the potential sentence he might receive; and

b.    After sentencing, counsel failed to file an appeal on his behalf.

As relief, Petitioner requests that the Court revoke his plea and re-sentence him.

**2.    Petitioner's Amended Motion to Vacate Under 28 U.S.C. § 2255 (ECF No. 81)**

Petitioner reiterates the grounds already raised in his original petition and raises two more:

c.    His conviction was obtained by virtue of a defective plea because he was suffering from a mental disease or defect that impaired his ability to enter a plea with full understanding of the nature of the charge and its consequences; and

d.    Counsel was ineffective for failing to notify the Court of Petitioner's mental disease or defect and for failing to seek a competency determination for Petitioner.

### 3.    Petitioner's Response to the *Hill v. Braxton* Notice (ECF No. 85)

Petitioner elaborates on his Ground Two claim, explaining that he did not discover that counsel had not filed an appeal until January 2008, at which time he began preparing a § 2255 motion. He avers that he completed his § 2255 in mid-February 2008;[3] however, shortly afterwards he was placed into administrative detention and all of his property, including his § 2255 motion, was confiscated by the Bureau of Prisons ("BOP"). He did not regain possession of his belongings until after he was transferred to the Special Management Unit at Talladega, Alabama. When he finally regained possession of his property his § 2255 motion was missing. When a search for it was unfruitful he wrote the January 5, 2010 letter to the Court,[4] which was later construed as a § 2255 motion.

Petitioner avers that he is entitled to equitable tolling of the statute of limitations for timely filing of his § 2255 motion because two governmental impediments existed. First, Petitioner argues that his counsel failed to inform him that no appeal had been filed and he could not file a collateral attack when he believed his direct appeal was pending. Second, Petitioner had already drafted and was prepared to file his § 2255 motion when it was seized by the BOP. In support of the latter, he cites case law from the Second, Ninth, and Tenth Circuits, holding that an inmate is entitled to

---

[3] A review of the docket reveals that on February 15, 2008, while incarcerated at USP Hazelton, Petitioner wrote a letter to the Clerk of District Court, advising that "I'm the defendant in the above captioned matter whom [sic] is in dire need of the following documents. Please be advised that my appellate rights are attached to said documents therefore, I would very much appreciate you forwarding them to me as soon as possible." (ECF No. 54 at 1) Petitioner's letter was docketed on February 19, 2008. In it, he requested copies of his Presentence Report ("PSR"), sentencing memorandum, sentencing transcript, and a copy of his docket sheet.

[4] Petitioner was incarcerated at FCI Talladega, AL, when he wrote the January 5, 2010 letter. (ECF No. 61)

equitable tolling if his legal materials have been seized by the BOP.[5]

**4.    Government's Response (ECF No. 95)**

Petitioner waived his right to file a collateral attack and his § 2255 motion should be dismissed.  At the plea hearing, the Court ensured Petitioner's competency to enter the plea in a thorough Rule 11 colloquy; Petitioner acknowledged that he understood his rights and voluntarily gave them up pursuant to the plea agreement.

The Government contacted Petitioner's counsel in an attempt to verify Petitioner's claim that counsel failed to file an appeal but counsel "advised that he is not comfortable releasing the requested information concerning his client to the government."  (ECF No. 95 at 4.)  Therefore, the Government could not address Petitioner's *Hill v. Braxton* response and moved the Court to schedule an evidentiary hearing to address Petitioner's ineffective assistance of counsel claims.

**5.    Petitioner's Reply**

Petitioner opposes the Government's motion to dismiss and reiterates his claims asserting that his incompetency at the plea hearing precluded the finding that his waiver of his appellate and habeas corpus rights was valid.  He requests a competency exam pursuant to 18 U.S.C. § 4241 to determine whether he was competent to waive his appellate and collateral attack rights.  He also requests an evidentiary hearing to determine whether he was competent at the time and whether counsel provided ineffective assistance.

*D.    Evidentiary Hearing*

---

[5] The cases cited by Petitioner are *United States v. Gabaldon*, 522 F.3d 1121 (10th Cir. 2008); *Espinoza-Matthews v. California*, 432 F.3d 1021 (9th Cir. 2005); and *Valverde v. Stinson*, 224 F.3d 129 (2d Cir. 2000).

On August 10, 2011, this Court held an evidentiary hearing on the issue of whether the Petitioner instructed his counsel to file a notice of appeal. At that hearing, Petitioner testified that on the date he signed his plea agreement, his counsel, Brian J. Kornbrath, Federal Public Defender for the Northern District of West Virginia, only spoke to him for about five minutes to discuss the entire agreement. At the close of his sentencing before United States District Judge Irene M. Keeley, Petitioner was informed by the Judge that he had 10 days to appeal his sentence. Petitioner testified that as he was being escorted from the courtroom following the hearing, he turned to Mr. Kornbrath and told him to "put in the appeal," to which Mr. Kornbrath replied that there was no need because there was nothing to appeal. Petitioner testified that he did not respond to Mr. Kornbrath's comment at that time. After his sentencing, Petitioner's daughter passed away due to sudden infant death syndrome, and Petitioner contacted Mr. Kornbrath's secretary, Ms. Callis, about making arrangements to attend the funeral. He did not talk to Ms. Callis at that time about his appeal, and did not attempt to contact Mr. Kornbrath to discuss his appeal.

Petitioner presented two letters at the evidentiary hearing which were admitted into evidence. Bother letters are dated May 25, 2007 and both were notarized on May 29, 2007. The first letter, addressed to Mr. Kornbrath, states that he never recieved and would like copies of the transcript of his sentencing as well as his presentence report. The letter to Mr. Kornbrath states that he was requesting the materials because his family wanted to see the transcript and because he wanted to make sure that the presentence report possessed by FCI-Beckley was corrected. The second letter, addressed to Ms. Callis, states that he would like copies of everything that was said at his sentencing and a copy of the corrections made in his presentence report. At the hearing, Petitioner testified that the letters were sent to find out the status of his appeal and that he never received a response to the letters.

On cross-examination, Petitioner admitted that his letters did not ask Mr. Kornbrath about his appeal, but instead stated that he was only asking for information to pass on to his family. Petitioner acknowledged that Mr. Kornbrath was savvy with the law and that Mr. Kornbrath advised him that there were no appealable errors that he could identify. Petitioner also acknowledged that the basis of his current motion is a brief conversation that he alleged occurred at the end of the sentencing hearing. Petitioner claimed to have filed a document with the Court within the one-year window for his § 2255 motion, but admitted that he had no proof of doing so and that despite having notarized letters to his counsel he did not have a notarized document establishing that he tried to file his § 2255. Petitioner was also questioned about a letter sent to him by Mr. Kornbrath advising him that he would file an appeal on his behalf if requested; Petitioner maintained that he never received the letter, which was dated March 14, 2007, and contained information about his daughter's funeral.

Brian Kornbrath, Petitioner's original attorney, also testified at the hearing, stating that he spent 48 minutes with Petitioner at the jail discussing the plea agreement, which was signed that same day. Mr. Kornbrath testified that at the sentencing hearing, he did not discuss the possibility of an appeal with Petitioner and that he does not remember being instructed to file an appeal. Had he been instructed to file an appeal, Mr. Kornbrath testified that he would have met with Petitioner in an attempt to explain why an appeal would not be advisable but would do so if Petitioner insisted.

In regard to communications with Petitioner following sentencing, Mr. Kornbrath did not recall receiving the letters presented at the hearing by Petitioner and did not have a copy of the letters in his file; however, he stated that his office investigator maintains a separate file and that the letter to Ms. Callis may have been filed with those separate documents. Mr. Kornbrath further testified that he did not remember hearing from Petitioner until October 16, 2008, when he received a letter requesting discovery and a copy of his presentence report, which were all sent on December

3, 2008.

The Government introduced three documents as evidence during Mr. Kornbrath's testimony. The first document, a letter dated March 14, 2007, contains Mr. Kornbrath's assessment of the sentencing hearing and his estimate of Petitioner's chances of success on appeal. The letter further stated that he did not see any issues that had a chance of winning, but instructed the Petitioner to "[c]ontact me immediately upon receipt of this letter if you disagree with my assessment. If I do not hear from you, I will assume that you agree with my assessment, no notice of appeal will be filed, and your direct appeal rights will be terminated." The letter also discusses the funeral arrangements for Petitioner's daughter. The Government also introduced a memo discussing the possible guideline calculations in Petitioner's case, which showed that the defendant was possibly facing a sentence as short as 151 months or, if a larger drug weight and certain sentencing enhancements were applied, as long as 240 months. The Government also introduced a formal letter dated February 9, 2007, discussing the presentence report findings and stating that the Petitioner's guideline calculations were the lowest range that had been previously estimated.

### III. DISCUSSION

A.      *Analysis of Petitioner's Claim that Counsel Failed to File an Appeal*

Petitioner claims that he unequivocally instructed his attorney to file a notice of appeal and that his counsel failed to do so, providing ineffective assistance that deprived him of his right to appeal. Petitioner's argument fails because the evidence and testimony presented to the Court establish that Petitioner's attorney was not unequivocally instructed to file an appeal, no rational attorney would have thought that Petitioner would want to appeal, and Petitioner failed to indicate that he had any interest in filing an appeal. Accordingly, this Court finds that Petitioner's counsel was not ineffective.

When a criminal defendant instructs counsel to file an appeal and the appeal is not filed, counsel is considered *per se* ineffective. *Rose v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000). Additionally, the Fourth Circuit maintains that counsel must file an appeal if asked, "even if doing so would be contrary to the plea agreement and harmful to the client's interests." *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007).

The standard for establishing ineffective assistance of counsel is the familiar standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must establish that counsel's acts or omissions "were outside the range of professionally competent assistance." *Id.* at 690. Judicial scrutiny of counsel's performance is "highly deferential," and the Court must avoid second-guessing counsel's strategy for obtaining a favorable result for the client. *Id.* at 689. The burden is on the defendant to prove, by a preponderance of the evidence, that counsel's performance was unreasonable. *Id.* at 687-88. The reasonableness of counsel's performance is an objective inquiry. *Id.* at 688.

After an evidentiary hearing on whether counsel was instructed to file a Notice of Appeal, *Poindexter* requires the Court to determine whether the defendant unequivocally instructed his attorney to file a Notice of Appeal or, if his attorney was not so instructed, the court will determine if Petitioner meets his burden of showing that (1) his attorney had a duty to consult under *Rose v. Flores-Ortega*, 528 U.S. 470; (2) his attorney failed to fulfill his consultation obligations; and (3) he was prejudiced by his attorney's failure to fulfill these obligations. *Poindexter*, 492 F.3d at 273.

### 1.      Petitioner Did Not Unequivocally Instruct His Attorney to File an Appeal

First, the Court finds that Petitioner's testimony is not credible on the issue of whether he unequivocally instructed Mr. Kornbrath to file a Notice of Appeal. As stated by Mr. Kornbrath in his testimony, he does not recall Petitioner ever requesting him to file an appeal, but if he had been

so instructed he would have done so. Mr. Kornbrath's letter, dated March 14, 2007, supports his testimony because the letter clearly states that Petitioner needed to contact Mr. Kornbrath if he wished to file an appeal and Petitioner failed to do so. Additionally, the letter shows that Mr. Kornbrath had been in contact with Petitioner following his sentencing; Petitioner did not find out about his daughter's death until after the sentencing hearing and the letter discusses details of the funeral arrangements. Because the weight of the evidence shows that Petitioner did not communicate to Mr. Kornbrath his desire to appeal, this Court finds that Petitioner did not unequivocally instruct his attorney to file an appeal.

2. **No Rational Defendant Would Wish to Appeal the Sentence Imposed in this Case**

Second, the Court finds that Mr. Kornbrath had no reason to think that a rational defendant would want to appeal the sentence imposed in this matter. Government Exhibit 1, which was given to Petitioner on the date he signed his plea agreement, states that the Government was seeking a 240 month sentence by way of arguing for 150-500 grams of crack cocaine distribution and certain sentencing enhancements. The memo also notes that Petitioner's best case scenario was a sentence of 151-188 months if the defense successfully argued against the enhancements and in favor of a reduced drug weight. The defense was successful in defeating the higher guideline range and, as stated in Mr. Kornbrath's February 9, 2007, letter, the presentence report calculations were "the best we could hope for." In fact, Petitioner received a sentence of 151 months -- the lowest end of the sentencing estimates. Given these facts, along with the provisions of the plea agreement which waived the right to appeal, Mr. Kornbrath clearly would not have had a duty to consult because no rational defendant would wish to appeal a sentence that imposed such a favorable sentence.

3. **Petitioner Did Not Reasonably Demonstrate That He Was Interested In Appealing**

Third, the Court finds that Petitioner failed to reasonably demonstrate to his counsel that he was interested in appealing. As noted above, Mr. Kornbrath's testimony and documentary evidence show that Petitioner had been in contact with his attorney following sentencing and that Petitioner did not show any indication of wanting to appeal. In fact, the letter states that Petitioner should contact Mr. Kornbrath "immediately" and Petitioner's testimony shows that he did contact Mr. Kornbrath about the status of his daughter's funeral but made no mention at all of an appeal.

B.     *Petitioner's Four Claims Are Untimely Under the One-Year Statute of Limitations*

Even if the Court assumes that Petitioner asked Mr. Kornbrath to file an appeal, this claim, along with Petitioner's other three claims, are untimely. A one-year statute of limitations applies to all motions brought pursuant to 28 U.S.C. § 2255. 28 U.S.C. § 2255(f). As § 2255(f) states, the one-year statute of limitations begins to run from four possible dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)-(4).

Petitioner has not asserted that the one-year statute of limitations should run from a date that a governmental impediment was removed, that a right was recognized by the Supreme Court, or that he discovered new facts supporting his claims through the exercise of due diligence as required by 28 U.S.C. § 2255(f)(2)-(4). Therefore, to satisfy the statute of limitations, Petitioner must have filed

his motion within one year from "the date on which [his] judgment of conviction bec[ame] final."

28 U.S.C. § 2255(f)(1). The Fourth Circuit has determined that a federal prisoner's conviction

becomes final on the date upon which he fails to pursue further direct appellate review. *United*

*States v. Sanders*, 247 F.3d 139, 142 (4th Cir. 2001). Petitioner's judgment order was filed on

March 13, 2007. (Judgment in a Criminal Case, ECF No. 47.) Therefore, because Petitioner did not

pursue a direct appeal, his conviction became "final" pursuant to § 2255(f)(1) on March 13, 2007.

*See Sanders*, 247 F.3d at 142. Petitioner had until March 13, 2008 to file his § 2255 motion, but his

motion was not filed until January 21, 2010 (ECF No. 60), and his amended motion was not filed

until March 4, 2010 (ECF No. 81).[6] Because Petitioner filed his motion almost two years after the

one-year statute of limitations ran, this Court finds that Petitioner's motion is untimely unless

Petitioner can satisfy his burden of demonstrating that equitable tolling should be applied to his case.

## C. *Petitioner Is Not Entitled to Equitable Tolling of the Statute of Limitations*

Equitable tolling is usually applied to two situations. "'In the first, the plaintiffs were

prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant.

In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the

claims on time.'" *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (quoting *Alvarez-*

---

[6] The Court notes that the dates of January 21, 2010 and March 4, 2010 are when Petitioner's motions were filed in the CM/ECF system. The Supreme Court has held that under the "mailbox rule," a prisoner's motion should be considered filed at the time the prisoner delivers it "to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276 (1988). However, nothing in Petitioner's motion nor his amended motion provides evidence as to when he gave these documents to the prison authorities to be mailed. Petitioner's amended motion notes that he executed the amended motion on February 20, 2010. (ECF No. 81 at 7.) Even assuming that this is the same date Petitioner gave his amended motion to prison authorities for mailing, Petitioner's motions are still untimely.

*Machain v. United States*, 107 F.3d 696, 700 (9th Cir. 1996)). In the Fourth Circuit, "the movant must show (1) that he has diligently pursued his rights and (2) that some extraordinary circumstance prevented the timely filing." *United States v. Oriakhi*, 394 F. App'x 976, 977, 2010 WL 3522005, at *1 (4th Cir. Sept. 10, 2010). Under the "extraordinary circumstance" prong, a prisoner is entitled to equitable tolling "if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003). However, courts should only apply equitable tolling in "those rare instances where–due to circumstances external to the party's own conduct–it would be unconscionable to enforce the limitations period against the party and gross injustice would result." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (quoting *Rouse*, 339 F.3d at 246).

In his Response to *Hill v. Braxton* Notice (ECF No. 85), Petitioner asserts that equitable tolling should apply to his case for two reasons. First, Petitioner asserts that equitable tolling should apply because Mr. Kornbrath did not file a direct appeal. (*Id.* at 3.) Accordingly, Petitioner asserts that because Mr. Kornbrath did not inform him that no appeal had been taken, he could not have filed his motion pursuant to § 2255 "when it appeared a direct appeal was pending." (*Id.*)

It is recognized that equitable tolling may apply in a case where a defendant instructs his attorney to file an appeal but the attorney fails to do so; however, this alone does not fulfill the petitioner's burden of showing that he has been diligent in pursuing his rights and that an extraordinary circumstance prevented him from filing his petition on time. *See United States v. Padilla*, 478 F. Supp. 2d 865, 869 (citation omitted). Here, however, Petitioner has not demonstrated that he "diligently pursued his rights" in determining whether Mr. Kornbrath had filed an appeal. At the evidentiary hearing, Petitioner admitted that his letters to Mr. Kornbrath only asked for information regarding his sentencing and presentence report and never asked about an

appeal. Furthermore, Petitioner admitted that Mr. Kornbrath had told him that he could identify no appealable errors. Mr. Kornbrath also testified that he received no communication from Petitioner instructing him to file an appeal. The fact that Petitioner wrote letters to Mr. Kornbrath asking him for information to pass on to his family but failed to ask about the status of an appeal demonstrates that Petitioner has not been diligent in pursuing his rights. Therefore, Petitioner is not entitled to equitable tolling of the statute of limitations based on his assertion that he did not know that Mr. Kornbrath had not filed an appeal. *See Mendoza Sanchez v. United States*, No. 7:07-cv-00432, 2008 WL 2490659, at *9 (W.D. Va. June 20, 2008) (finding that petitioner had not exercised due diligence to determine whether an appeal had been filed); *Harris v. United States*, AW-06-2404, 2007 WL 2579839, at *2 (D. Md. Aug. 31, 2007) (finding that petitioner was not entitled to equitable tolling because he was aware that no appeal had been filed before the statute of limitations ran).

Second, Petitioner asserts that he is entitled to equitable tolling because shortly after his § 2255 motion was complete in mid-February 2008, he was placed into Administrative Detention and all his legal property, including his motion, was seized and not returned until January 2010. (ECF No. 85 at 2-4.) In support of his argument, Petitioner cites cases from the Second, Ninth, and Tenth Circuits holding that prisoners are entitled to equitable tolling when they are denied all access to their legal materials. (*Id.* at 4-5.)

While the cases cited by Petitioner do hold that the confiscation of a prisoner's legal materials is an extraordinary circumstance, "equitable tolling is justified only where the prisoner has shown that despite his segregated confinement he diligently pursued his habeas claims and his confinement prevented him from filing on time." *Green v. Kansas*, 190 F. App'x 682, 684-85 (10th Cir. 2006). "'[T]ransfers between prison facilities, solitary confinement, lockdowns, restricted

access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances." *Allen v. Johnson*, 602 F. Supp. 2d 724, 727-28 (E.D. Va. 2009) (quoting *Warren v. Kelly*, 207 F. Supp. 2d 6, 10 (E.D.N.Y. 2002)). Furthermore, according to BOP regulations, prisons "may limit the amount of legal materials an inmate may accumulate for security or housekeeping reasons." 28 C.F.R. § 543.11(d)(2) (2011). However, "[t]he Warden *shall* allow an inmate in segregation or detention a reasonable amount of personal legal materials." 28 C.F.R. § 543.11(j) (2011).

Assuming the truth of Petitioner's allegations, Petitioner is not entitled to equitable tolling based on his assertions that his legal materials were confiscated during his stay in Administrative Detention and not returned until January 2010. (*See* ECF No. 85 at 2-4.) In fact, even though BOP regulations provide that inmates in detention should be allowed a "reasonable amount of personal legal materials," 28 C.F.R. § 543.11(j), Petitioner has not even alleged that he either requested that his § 2255 motion be returned to him or that it be given to prison officials for forwarding to the Clerk. *Cf. Gabaldon*, 522 F.3d at 11-26-27 (finding that petitioner demonstrated due diligence in attempting to retrieve his legal materials to warrant the application of equitable tolling); *Espinoza-Matthews*, 432 F.3d at 1027-28 (finding petitioner eligible for equitable tolling after finding that petitioner had repeatedly requested information about the location of his legal property but did not have the property returned to him). Furthermore, Petitioner asserts that he completed his § 2255 motion in mid-February 2008–before he was placed into Administrative Detention. (ECF No. 85 at 2.) Assuming the truth of this allegation, Petitioner has provided no explanation why he simply did not take advantage of the "mailbox rule" by giving his completed motion to prison authorities to be forwarded to the Clerk for filing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a prisoner's motion should be considered filed at the time it is given to prison authorities for

forwarding to the courts).

In sum, the Court concludes that Petitioner has not demonstrated that he is entitled to equitable tolling of the one-year statute of limitations because he has not "diligently pursued his rights." *Oriakhi*, 394 F. App'x at 977, 2010 WL 3522005, at *1. Specifically, Petitioner was not diligent in contacting Mr. Kornbrath about the status of his appeal, and he was not diligent in either giving his § 2255 motion to prison authorities for filing or requesting access to his legal materials while in Administrative Detention. Therefore, because equitable tolling should not apply to Petitioner's claims, his claims are untimely and should be denied.

## IV. RECOMMENDATION

Based on the above findings, this Court concludes that Petitioner has failed to establish ineffective assistance of counsel under the *Poindexter* criterion. Petitioner has failed to show that he unequivocally instructed his attorney to file an appeal or that he demonstrated an interest in appealing, and no rational defendant would wish to appeal the sentence in this matter. Furthermore, even assuming that Petitioner did instruct his attorney to file an appeal, this claim, along with Petitioner's other three claims, are untimely, and Petitioner has not met his burden in demonstrating that he is entitled to equitable tolling of the statute of limitations. Accordingly, the undersigned recommends that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 60) and his Amended Motion to Vacate Under 28 U.S.C. § 2255 (ECF No. 81) be **DENIED.**

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Hon. Irene M. Keeley, United States District Judge. Failure

to fimely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

**DATED**:        September 19, 2011

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE